UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LORI E. HAMILTON, | CASE NO. 11cv5927-BHS-JRC |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | Noting Date: October 19, 2012 |
| Defendant. | |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 15, 20, 21).

Although plaintiff faults the ALJ for crediting one examining doctor's opinion over that of another examining doctor, the ALJ adequately set out a detailed and thorough summary of the facts and conflicting clinical evidence, stated his interpretation thereof,

and made appropriate findings. In addition, the ALJ provided germane reasons for his failure to credit fully opinion evidence from lay sources, such as plaintiff's mother.

The ALJ's written decision is without harmful legal error and based on substantial evidence in the record as a whole. For these reasons, this matter should be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, LORI E. HAMILTON, was thirty-one years old on the date of the ALJ's written decision of May 24, 2010, and was twelve years old on her original alleged date of disability onset (Tr. 128; *see also infra*, PROCEDURAL HISTORY). Plaintiff reportedly had difficulties in school, and was prescribed Ritalin for a diagnosis of ADD while in the fifth grade (*see* Tr. 255). Plaintiff's mother, Ms. Renae E. Hamilton ("Ms. Hamilton"), describes plaintiff's difficulties getting along with other children and refers generally to plaintiff's "early life experiences that have caused a lot of trauma for her and continue to interfere with her life now" (*id.*). Plaintiff appears to have been the victim of violence at a young age, and again subsequently as an adult (*see* Tr. 381-83).

Plaintiff had various jobs for short periods of time. The ALJ found that she did not have any past relevant work and had not engaged in substantial gainful activity since her application date (Tr. 32, 40). Regarding her work ability, plaintiff indicated to her psychological evaluator that: "I was working. It's not a problem to find a job. It's [] to maintain a job and not having life get overwhelming when I'm working" (*see* Tr. 381). Plaintiff indicated that she cannot manage her life and her children while working (*see id.*).

## PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income ("SSI") on February 23, 2004 with an alleged disability onset date of December 1, 1991 (Tr. 228-31). Her application was denied initially and following reconsideration (Tr. 215-17, 219-22, 227). After an initial hearing before Administrative Law Judge James M. Mitchell and a written decision (*see* Tr. 140-204), the Appeals Council remanded this matter to Administrative Law Judge M. J. Adams ("the ALJ") so that he could evaluate explicitly the opinion evidence supplied by Dr. Terrilee Wingate, Ph.D. ("Dr. Wingate") and provide a function by function analysis of plaintiff's abilities and limitations, among other reasons (*see* Tr. 30, 125-27).

Plaintiff's subsequent hearing was held before the ALJ on May 5, 2009 (*see* Tr. 87-113). Plaintiff also had a supplemental hearing on February 17, 2010 (Tr. 48-83). On May 24, 2010, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 27-42).

On September 7, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 5-8). *See* 20 C.F.R. § 404.981. On November 11, 2011, plaintiff filed a complaint in this Court, seeking judicial review of the ALJ's written decision (*see* ECF No. 1). Plaintiff challenges the ALJ's review of the medical evidence and the lay evidence, as well as the ALJ's step five finding that plaintiff was capable of performing jobs existing in significant numbers in the national economy (*see* Opening Brief, ECF No. 15, p. 1).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole,

weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 2012 U.S. App. LEXIS 6570 at

*24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

<u>DISCUSSION</u>

1. **The ALJ evaluated properly plaintiff's credibility**.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999); *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). The ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)).

The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen, supra*, 80 F.3d at 1284; *see also Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen, supra*, 80 F.3d at 1283-84; *Reddick, supra*, 157 F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

Plaintiff did not raise as a specific issue in her Opening Brief the ALJ's review of plaintiff's testimony and credibility, and arguably has waived such challenge (*see* ECF No. 20, p. 1). *Cf. Thompson v. Commissioner*, 631 F.3d 642, 649 (9th Cir. 1980), *cert. denied*, 452 U.S. 961 (1981) ("appellants cannot raise a new issue for the first time in their reply briefs") (*citing U.S. v. Puchi*, 441 F.2d 697, 703 (9th Cir. 1971), *cert. denied*, 404 U.S. 853 (1971)); *U.S. v. Levy*, 391 F.3d 1327, 1334 (11th Cir. 2004) ("this Court *will not* consider claims raised in a petition for rehearing that were never raised, in any form, in a defendant's initial brief on direct appeal") (*citing U.S. v. Ardley*, 242 F.3d 989, 990 (11th Cir. 2001)(emphasis in original)).

However, this Court has an independent burden to determine whether or not "the Commissioner's decision is: (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce, supra*, 557 F.3d at 1115 (*citing Moore, supra*, 278 F.3d at 924); *Smolen, supra*, 80 F.3d at 1279; *see also Levy, supra*, 391 F.3d at 1335 ("the issue is not whether this Court has the power to consider issues not raised in the initial brief; of course it does"). In this matter, the ALJ provided clear and convincing reasons for his failure to credit fully plaintiff's credibility and testimony, as discussed further below.

Although not every reason provided by the ALJ for his credibility determination was relied on properly, the ALJ provided numerous valid reasons for his credibility determination. For example, the ALJ noted that "Dr. van Dam recorded that in symptom validity testing, which systematically assesses neurological, psychological amnestic, and affect challenges, the claimant's responses were 'never noted among individuals who suffer from such conditions,' thereby viewed as 'being consistent with malingering'" (Tr.

37). The ALJ also noted that Dr. Carla van Dam, Ph.D, ("Dr. van Dam") "further opined that based on symptom validity testing, the claimant's competencies might be 'greater than indicated'" (*id.* (*citing* Exhibit 16F at 7, *i.e.*, Tr. 387)).

Another reason provided by the ALJ for his credibility determination was plaintiff's contradictory statements as to why she quit her gas station job (*see id.*). As stated by the ALJ, plaintiff was alleging that psychiatric issues impaired her ability to keep her jobs, yet "she stated at least twice that she quit her work because of reasons other than a medically determinable impairment as required under the Social Security Regulations" (*see* Tr. 37-38 (*citing* Exhibit 16F, p. 1, *i.e.*, Tr. 381); *see also* ECF No. 15, p. 14 (plaintiff contends that she cannot hold a job because she gets anxious and overwhelmed due to her ADHD, personality disorder, anxiety and depression)). The ALJ noted plaintiff's testimony that she quit her job at a gas station "because the shift was from the 'middle afternoon to 10pm' and she has 'two small kids and could not do it,'" and her similar report to Dr. Terrilee Wingate, Ph.D. ("Dr. Wingate) that her swing shift "'didn't work well with small kids'" (Tr. 38). Although the evidence can be interpreted in multiple ways, the ALJ's finding is based on substantial evidence in the record as a whole. *See Magallanes, supra*, 881 F.2d at 750 ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"). It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *See Thomas v. Barnhart*, 278 F.3d 947,

954 (9th Cir. 2002) (*citing Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599, 601 (9th Cir. 1999)).

Finally, in addition to the valid reasons discussed, the ALJ also relied on medical opinion evidence and a lack of objective medical evidence to substantiate plaintiff's allegations in order to support his findings regarding plaintiff's credibility and testimony (*see* Tr. 36-37). He noted plaintiff's report of being able to walk for miles before having to stop and rest, and the note in her treatment record that her son weighed thirty pounds and that she nevertheless did "a lot of lifting and carrying of him" (*see* Tr. 36). Plaintiff complains that "carrying a young child, particular one with special needs, is often a necessity for a single mother. That is not to say that it is easy" (*see* ECF No. 15, p. 21).

The Court notes that the fact that plaintiff repeatedly was capable of the task, regardless of how necessary or difficult it was, demonstrates her capability of performing the task. That is to say, necessity cannot create ability where such ability does not exist independent of the necessity. With respect to these comments about plaintiff's ability to lift and carry her son, the ALJ appears to be addressing the inconsistency between plaintiff's allegations of physical limitations, such as with her neck and shoulder, with plaintiff's self-reported ability to do a lot of lifting and carrying of her thirty pound son (*see* Tr. 485). For example, the ALJ indicates in his written decision specifically that plaintiff consistently alleged that her "physical complaints are problems at the back and right shoulder, and occasional numbing of the arms" (*see* Tr. 36). The ALJ supports his finding that plaintiff was capable of medium work despite plaintiff's allegations to the contrary, in part, by noting that plaintiff was able to walk and lift and carry her thirty

1   pound son often (*see* Tr. 36). The Court notes that the ALJ's finding of inconsistency also

2   is buttressed by the plaintiff's testimony at her first hearing that she "can't lift over ten

3   pounds" and "can't have very much motion" or her shoulders "get really inflamed and

4   swollen" (*see* Tr. 171). The Court finds no error in the ALJ reliance on the objective

5   medical evidence and indications from plaintiff in her treatment records that she was

6   more capable than she alleged in her Social Security application and in hearings before

7   the Administration.

8          The Court also notes that the ALJ's reliance on the medical evidence to discount

9   plaintiff's testimony regarding her physical limitations was supported by additional

10  specific examples, such as radiologic findings (*see* Tr. 36-37). The ALJ also noted that

11  Dr. Yoshihiro Yamamoto, M.D. ("Dr. Yamamoto") "confirmed 'full range of motion,'

12  'non-tender to palpation,' and 'no abnormal curvature' on December 18, 2007" (*see id.*

13  (*citing* Tr. 417)). The Court also notes that Dr. Yamamoto indicated his opinion that

14  plaintiff's MRI was "rather benign, and there is no need for neurosurgical intervention"

15  (*see* Tr. 417).  He also indicated that regarding plaintiff's right arm numbness, "we have

16  no explanation for these symptoms from her MRI" (*id.*). The ALJ accorded Dr.

17  Yamamoto's opinions significant weight, as he did to the opinions of the state agency

18  medical consultants, whose opinions he found to be consistent with those of Dr.

19  Yamamoto (*id.*).

20         For the reasons stated and based on the relevant record, the Court concludes that

21  the ALJ's findings regarding plaintiff's credibility and testimony were supported by

22  substantial evidence in the record as a whole. The ALJ provided clear and convincing

reasons for his failure to credit fully her testimony and allegations. *See Smolen, supra*, 80 F.3d at 1283-84; *Reddick, supra*, 157 F.3d at 722.

2. **The ALJ evaluated properly the medical evidence**.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))). It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra*, 169 F.3d at 599, 601). Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan, supra,* 169 F.3d at 603. The ALJ also may draw inferences "logically flowing from the evidence." *Sample, supra,* 694 F.2d at 642 (citations omitted).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d).  A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes, supra*, 881 F.2d at 752).  "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831); *see also* 20 C.F.R. § 404.1527(d)(2)(i) (when considering medical

1  opinion evidence, the Commissioner will consider the length and extent of the treatment

2  relationship).

3      a.  Plaintiff's other medical sources

4      The Court first notes that plaintiff presents a discussion of the treatment notes of

5  plaintiff's other medical sources, but the majority of this discussion revolves around

6  plaintiff's argument that the ALJ erred in not crediting fully Dr. Wingate's opinions, *see*

7  *infra*, section 2.b,  and that these treatment notes support Dr. Wingate's opinions (*see*

8  ECF No. 15, pp. 7-11). Plaintiff argues that had the ALJ accorded "these documents their

9  proper weight  .  .  .  .  he would have found that they supported Dr. Wingate's opinion"

10  (*id.*, p. 11).

11

12      Plaintiff contends that these records were entitled to great weight, yet, the majority

13  of this discussion involves treatment notes based on plaintiff's subjective reports (*see*

14  ECF No. 15, pp. 7-11). In addition, the citation provided by plaintiff in support of her

15  assertion only indicates that these records are important; should be evaluated; and may

16  demonstrate the level of impairment suffered by a claimant (*see id.*, p. 10 (*citing* SSR 06-

17  3p, 2006 WL 2329993)). *See also Stout v. Commissioner*, *Social Security Administration*,

18  454 F.3d 1050, 1053 (9th Cir. 2006). Although these treatment notes and observations

19  from other medical sources may support Dr. Wingate's opinions, plaintiff has not

20  specified an opinion from these other medical sources that was rejected improperly

21  despite her allegation that they indicate that she was "not yet able to work on regular and

22  continuing basis" (*see id.*, p. 10). In addition, there is no evidence that the ALJ did not

23  consider these records, and affirmative evidence that he considered them, as he cited

24

them (*see id.* (*citing* Ms. Shauna Franklin, MPH, as plaintiff's therapist); Tr. 38 (ALJ

cited February 12, 2010 treatment letter by Ms. Shauna Franklin, MPH, and her note that

plaintiff did not take meds); *see also* Tr. 307, 324).  The Court also notes that Advanced

Registered Nurse Practitioner Dwight Bushue evaluated plaintiff on February 8, 2007,

and indicated his opinion that Plaintiff would have a great deal of difficulty finding any

employment due to "childcare issues," unless "she could get the state to pay for daycare

and get involved in some type of pre-employment program" (*see* Tr. 512).

   The Court is aware that this evidence from plaintiff's other medical treating

sources is important and that the ALJ was required to consider such evidence. *See Turner*

*v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. §

404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5, 2006 WL

2329939. The ALJ was required to give germane reasons to the extent that he rejected

any specific opinions by these sources that were relevant to the ultimate determination

regarding plaintiff's disability. *See Turner, supra*, 613 F.3d at 1224 (*citing Lewis v. Apfel*,

236 F.3d 503, 511 (9th Cir. 2001)); s*ee also Molina, supra*, 2012 U.S. App. LEXIS 6570

at *24-*26, *32-*36, *45-*46 (*quoting Lewis, supra*, 236 F.3d at 512) (if the ALJ has

provided proper reasons to discount the lay testimony in another aspect of the written

decision, the lay testimony may be considered discounted properly). Again, plaintiff has

not specified an opinion from these other medical sources regarding specific functional

limitations on plaintiff's ability to work that was rejected improperly.

   For these reasons and based on a review of the relevant record, the Court finds no

error in the ALJ's review of the treatment records of these other medical sources.

1

    b.  Dr. Wingate, examining doctor

2

    Plaintiff contends that the ALJ improperly rejected the opinion of examining

3

doctor, Dr. Wingate, in favor of non-examining doctors and in favor of consultative

4

examining doctor, Dr. van Dam. Dr. Wingate evaluated plaintiff on March 18, 2005 (Tr.

5

640-55). Dr. Wingate documented many of plaintiff's subjective complaints, such as that

6

plaintiff was moody; was having bad dreams; had a long history of self-mutilation; had

7

intrusive thoughts; was anxious in public; and was distrustful and irritable (*see* Tr. 641).

8

Although Dr. Wingate indicated that plaintiff's mood was "okay" on the date of her

9

evaluation, she nevertheless indicated her opinion that plaintiff suffered from markedly

10

severe depressed mood (*id.*).

11

12

    Dr. Wingate performed a mini mental status examination of plaintiff and indicated

13

that plaintiff obtained a perfect score of 30/30 (*see* Tr. 642; *see also* Tr. 650-51). For

14

example, plaintiff correctly performed the serial 7s task, where she demonstrated no

15

errors and adequate attention and calculation ability to complete the task (*see* Tr. 650).

16

She also demonstrated perfect memory of three words after a delay, demonstrating more

17

than adequate recall memory ability (*see* Tr. 651). Despite plaintiff's performance, Dr.

18

Wingate indicated her opinion that plaintiff suffered from marked limitations in her

19

ability to exercise judgment and make decision (*see* Tr. 642). Dr. Wingate also opined

20

that plaintiff suffered from marked limitations in a number of social factors and severe

21

limitation in her ability to respond appropriately to and tolerate the pressures and

22

expectation of a normal work setting (*id.*). In this section, she indicated that plaintiff was

23

24

able to "behave as expected in work situations for a while, then the anxiety and anger get in the way" (*id.*).

The ALJ gave the opinions of Dr. Wingate little weight (Tr. 39). He indicated that he took into consideration her opinion regarding plaintiff's "marked limitation in the ability to exercise judgment and make decisions, where her RFC assessment specifically includes the limitation for her to make simple, work-related decision to perform unskilled level of work only" (*id.*). Regarding Dr. Wingate's opinions about plaintiff's social limitations, the ALJ noted that Dr. Wingate "also wrote that the 'basis of each rating' was the claimant's self-destructive behaviors" (*id.* (*citing* Tr. 642)). The ALJ also noted that all of the incidents of self-destructive behaviors were self-reported and were unsupported by the treatment record (*id.*). When discounting the opinions of Dr. Wingate due to reliance on plaintiff's self-report, the ALJ noted that "objective results from symptoms validity test suggest malingering," and indicated that he was taking into consideration plaintiff's credibility profile (*id.*).

Based on a review of the relevant record, the Court concludes that the ALJ's indication that the incidents of plaintiff's self-destructive behaviors were self-reported is based on substantial evidence as a whole. Although numerous treatment providers indicated in their notes self-destructive behavior, such as "cutting," these notes all appear to be based on plaintiff's self-report. The Court has not been directed to any treatment record in which a medical provider has witnessed the behavior or has observed any scars resulting from alleged cutting behavior. Although the Court does not conclude that these allegations were not truthful, the Court finds that the ALJ's failure to credit fully Dr.

1    Wingate's opinions regarding social factors due to a lack of objective support in the

2    treatment record and due to a finding that Dr. Wingate relied heavily on plaintiff to report

3    her past history of self-destructive behavior is based on substantial evidence as a whole.

4    *See Magallanes*, *supra*, 881 F.2d at 750.

5         Although plaintiff contends that the ALJ should not have credited the opinions of

6    Dr. van Dam, plaintiff's arguments on this point demonstrate no error on the part of the

7    ALJ but entail a different interpretation of the evidence (*see* Opening Brief, ECF No. 15,

8    p. 15 ("Dr. van Dam placed an inordinate amount of weight on unsubstantiated claims of

9    substance abuse")). Plaintiff disagrees with Dr. van Dam's opinion that plaintiff's

10   emotional volatility was exacerbated by caffeine and/or other substances and plaintiff

11   provides her own interpretation of the evidence (*see id.*). Plaintiff provides arguments

12   regarding other "problems" with Dr. van Dam's report; however the ALJ is responsible

13   for determining credibility and resolving ambiguities and conflicts in the medical

14   evidence.  *See Reddick*, *supra*, 157 F.3d at 722.  It is not the job of the court to reweigh

15   the evidence: If the evidence "is susceptible to more than one rational interpretation,"

16   including one that supports the decision of the Commissioner, the Commissioner's

17   conclusion "must be upheld." *See Thomas*, *supra*, 278 F.3d at 954.

18        For these reasons and based on a review of the relevant record, the Court

19   concludes that the ALJ provided specific and legitimate reasons for his failure to credit

20   fully opinions from Dr. Wingate. *See Lester, supra*, 81 F.3d at 830-31. The ALJ's

21   resolution of the conflicting evidence is based on a rational interpretation of the evidence

22   and substantial evidence in the record as a whole.

3. **The ALJ evaluated properly the lay evidence**.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," *see* 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," *see* 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and chiropractors, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d)(1). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*citing Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

The Ninth Circuit has characterized lay witness testimony as "competent evidence," noting that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (*quoting Van Nguyen, supra*, 100 F.3d at 1467) (*citing Smolen v. Chater*, 80 F.3d 1273,

1289 (9th Cir. 1996)).  Testimony from "other non-medical sources," such as friends and

family members, *see* 20 C.F.R. § 404.1513 (d)(4), may not be disregarded simply

because of their relationship to the claimant or because of any potential financial interest

in the claimant's disability benefits. *Valentine v. Comm'r SSA,* 574 F.3d 685, 694 (9th

Cir. 2009).

In addition, "where the ALJ's error lies in a failure to properly discuss competent

lay testimony favorable to the claimant, a reviewing court cannot consider the error

harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting

the testimony, could have reached a different disability determination." *Stout, supra*, 454

F.3d at 1056 (reviewing cases). However, if the ALJ has provided proper reasons to

discount the lay testimony in another aspect of the written decision, such as within the

discussion of plaintiff's credibility, the lay testimony may be considered discounted

properly even if the ALJ fails to link explicitly the proper reasons to discount the lay

testimony to the lay testimony itself. *See Molina, supra*, 2012 U.S. App. LEXIS 6570 at

*24-*26, *32-*36, *45-*46 (*quoting Lewis, supra*, 236 F.3d at 512). The Court will not

reverse a decision by an ALJ in which the errors are harmless and do not affect the

ultimate decision regarding disability. *See Molina, supra*, 2012 U.S. App. LEXIS 6570 at

*24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S.

396, 407 (2009).

Here, the ALJ discussed the lay opinion offered by plaintiff's mother, Ms.

Hamilton, and gave numerous reasons for his failure to credit her opinion fully (*see* Tr.

39-40). First, the ALJ noted that Ms. Hamilton's descriptions of plaintiff's emotional instability already had been taken into consideration (*see id.*). The ALJ next found an inconsistency in Ms. Hamilton's lay statement in that "Mrs. Hamilton also mentioned the claimant's situation stressor of not 'ever have money for savings' but at the same time she shops at stores '3 or 4 times a week, for hours each time' as a 'very compulsive shopper' (Tr. 40 (*citing* Tr. 277)). The ALJ noted an additional potential inconsistency in that Ms. Hamilton "stated that the claimant has problems with concentration and completing tasks, [but] she also stated that her daughter has sufficient mental ability to pay bills, count change, and use a checkbook or money orders" (*id.* (*citing* Tr. 277, 279)). The ALJ indicated that he was giving Ms. Hamilton's opinions some weight, "but only to the extent consistent with the established medical diagnoses" (*id.*). Regarding some of the descriptions given by Ms. Hamilton about plaintiff's problems as a child and her upheaval in the past 10 years, the ALJ indicated that these descriptions did not "add substantially to what is already known from the claimant's medical record," and gave them little weight (*id.*).

Based on a review of the relevant record, the Court finds no harmful legal error in the ALJ's review of the lay statement offered by Ms. Hamilton. The ALJ's interpretations of multiple inconsistencies in Ms. Hamilton's opinion statement are rational interpretations based on substantial evidence and entail germane reasons for his failure to credit her opinions fully.

//

//

4. **The ALJ committed no legal error in his step five finding regarding plaintiff's ability to work jobs existing in the national economy**.

Plaintiff's challenges to the ALJ's step five finding repeat her previously discussed challenges to the medical and lay evidence (*see* Opening Brief, ECF No. 21). However, this Court already has determined that this evidence was evaluated properly by the ALJ. Therefore, the Court finds no error in the ALJ's step five determination.

CONCLUSION

The ALJ set out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. His findings were based on substantial evidence in the record as a whole and his decision was not based on harmful legal error.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

1    Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

2    matter for consideration on **October 19, 2012**, as noted in the caption.

3         Dated this 28th day of September, 2012.

4

5

6    J. Richard Creatura
     United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 22